Williams, J.
The principal question to which the arguments of counsel have been directed is, whether the lien of the judgment set up by the plaintiffs in error was lost by their failure to have execution issued upon it within five years from the date of the last preceding execution.
On the one hand, it is contended by counsel for the defendant in error, that the judgment below holding the lien was so lost, is in accordance with section 5380 of the Eevised Statutes, which provides that: “If execution on a judgment be not sued out within five years from the date of the judgment, or if five years intervene between the date of the last execution issued on such judgment and the time of suing out another execution thereon, such judgment shall become dormant and shall cease to operate as a lien on the estate of the judgment debtor.”
On the other hand, it is the claim of the counsel for the plaintiffs in error, that under section 6165, the fund arising from the sale made by the executor should be distributed to the liens in the order of their priority as they existed at the time of the testatrix’s death. That section reads as follows: “The money arising from the sale of real estate shall be applied in the following order:
“First. To discharge the costs and expenses of the sale, and the per centum and charges of the *155 executor or administrator thereon, for his administration of the same.
“Second. To the payment-of mortgages and judgments against the deceased, according to their respective priorities of lien, so far as the same operate as a lien on the estate of the deceased, at the time of his death; which shall be apportioned and determined by the court, or reference to a master or otherwise.
“Third. To the discharge of claims and debts, in the order mentioned in this title.”
Though these two sections are found in different divisions of the codification of the statutes, they are so in pari materia that they should be construed with reference to each other, and so that each may receive its appropriate effect. There is some apparent discrepancy between them, but it is not wholly irreconcilable. The former contains the general provision with respect to the dormancy of judgments, and the steps necessary to keep their liens alive; while by the latter, special provision is made in regard to the manner judgment and other liens shall be paid, and the order in which they shall be entitled to share, in the distribution of trust funds in particular cases. And, in accordance with a well-settled rule, the special provision may be regarded as an exception to the more general one, and as controlling in the particular class of cases to which it relates. Doll v. Barr, 58 Ohio St., 113, 120. It becomes of some importance then, to determine the proper scope of section 6165. Some confusion arises from the use of the word “operate” in the second clause; and the courts below transposed the language to read as follows: ‘‘To the payment of mortgages and judgments against the deceased, according to their respective priorities of lien, at the *156 time of his death, so far as the same operate as a lien on the estate of the deceased:” * thus using the word “operate,” in the present tense, that is, as of the time of distribution, or. the commencement of the action to sell the land; and holding that a judgment lien not kept on foot until that time by executions issued thereon every five years, is not entitled to payment out of the fund arising from the sale of the land, although the lien was a subsisting one at the time of the judgment debtor’s death. The confusion in the section largely disappears when the letter “d” is added to the word “operate;” and that, we find was the form of the section at the time of the codification, and had been since the administrator’s act of 1831. 3 Chase, 1781, S. & C., 594. The dropping of that letter in the codification may have been accidental; but if not, we cannot presume it was intended to change the meaning and construction of the statute. In that form of the section the transposition of its language alluded to is of no importance. Reading it as so transposed, or without making the transposition, the section requires the payment of the liens out of the proceeds of the sale in the order of their priority as they existed at the time of the decedent’s death; and. that requirement cannot be complied with unless they are treated as subsisting liens on the fund, in that order, when the distribution is made. There is much reason why that should be so. The death of the debtor stops ordinary process, and administration becomes the appropriate proceding for the payment of his debts. And, though there may be cases where judgment creditors who obtained a levy on the land of the debtor before his death have been allowed to proceed thereafter to *157 sale and confirmation, yet that is an extraordinary remedy which may complicate administration and prejudice the rights of the heir or devisee. The personal estate is nevertheless the primary fund for the satisfaction of liens, as well as other debts of the deceased; the title of the personal representative to the assets, whenever appointed, relates back to the time of the death, and in contemplation of law the estate is in process of administration from that time; the real estate, so far as may be necessary to pay any lien upon it, or other debt, becomes assets in his hands, and, the proper and usual method of subjecting it to the payment of the liens is by a proceeding* of the personal representative for that purpose. The law malees ample provision for such proceedings, and enjoins the duty of diligence on the representative, with a view of bringing the estate to a speedy settlement; and the prompt performance of that duty, the lien holder has the right to expect, and may accordingly rely on the security of his lien as it existed at the time of his debtor’s decease.
In this respect, the consequences of the transfer of the debtor’s property by operation of law, upon his decease, are much the same as those resulting when a voluntary assignment of property encumbered by liens is made by a debtor for the benefit of his creditors. In each case the trust attaches at once to the property, its administration is under the control of the court, and similar specific regulations are prescribed by statue for the disposition of the property, the adjustment of the liens, and the payment of the creditors. It was held, in Scott v. Dunn, 26 Ohio St., 63, that in the case of an assignment, “the priority of judment liens is to be determined as the liens existed at the time the assignment took *158 effect.” The question was whether a judgment which was the superior lien on land at the time of its assignment for the benefit of creditors, lost its priority over a junior judgment, also a lien on the land, by the failure to have execution issued upon the former within a year from the date of its rendition. The year had not expired when the assignment took effect, but thereafter expired before the sale of the property by the assignee. The following is the provision of the statute, under which it was held the liens were preserved as they existed when the assignment took effect: “The probate court shall order the payment of all incumbrances and liens upon any of the property sold, or rights and credits collected, out of the propceeds thereof, according to priority, provided, that the assignee may, in all cases where real estate to be sold is incumbered with liens, or where any questions in regard to the title require a decree to settle the same, file his petition for the sale of such real estate, in the court of common pleas of the proper county, making all persons in interest parties to .such proceedings; and, upon hearing, such court shall order a sale of the premises, the payment of incumbrances, and determine the questions involved in regard to the title to the same; and the proceeds of the real estate so sold by order of the court of common pleas, after payment of liens and incumbrances, as ordered by such court, shall be reported to the probate court by the assignee, and disposed of as provided in this act.” S. & S., section 9. And the statute then in force relating to the order of liens among judgments, now section 5415, of the Revised Statutes, provides that: “No judgment on which execution is not issued and levied *159 before the expiration of one year next after its rendition, shall operate as a lien on the estate of the debtor to the prejudice of any other bona fide judgment creditor.”
It may be observed that the statute which was held to fix the legal status of the liens on the assigned property as of the time of the taking effect of the assignment, does not do so with more certainty than are the liens preserved on the judgment debtor’s land as they existed at the time of his death, by the provisions of section 6165. And section 5115 is not less explicit in its provision that judgments shall cease to operate as liens in the given cases by failure to comply with its requirement, than is section 5380 when its provisions are not met. So that, upon the question here involved, this case seems indistinguishable in principle from that of Scott v. Dunn, supra.
It is also contended the demurrer was properly sustained, because the claim of the plaintiffs in error was not presented to the executor for allowance; and, furthermore, that it was barred, because the pleading was not filed within the time required by section 6113 of the Revised Statutes, after the executor qualified and gave notice of his appointment. Neither position appears to be tenable. The requirement of section 6115, that the executor make distribution to the lien of the plaintiffs in error according to its priority at the time of the testatrix’s death, dispensed with any necessity for its presentation for allowance, if it' were otherwise required. And pleading the lien, in the action brought by ihe executor, in order that it might receive its proper share of the proceeds of the land on which it was charged, is not the commencement of an action against the executor within the purview of the *160 statute which limits the time for bringing actions against executors and administrators.

Judgment reversed and cause remanded.